```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____           │
│ DATE FILED:___6/10/2022___       │
└─────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

ADEDAYO ILORI and CHRIS RECAMIER,

Defendants.

21-cr-00746 (MKV)

OPINION AND ORDER DENYING
MOTION TO SUPPRESS

---

MARY KAY VYSKOCIL, United States District Judge:

Defendants Adedayo Ilori and Chris Recamier are charged in a six-count Indictment with committing, *inter alia*, major fraud against the United States and identity theft. Before the Court is the pre-trial motion of Mr. Ilori, which Mr. Recamier seeks to join [ECF No. 28], to suppress physical evidence recovered from Mr. Ilori's person and from the trunk of the vehicle he was occupying at the time that he was arrested. [ECF No. 25].[1] Mr. Recamier's motion to join the pending motion is granted. For the reasons discussed below, the Motion to Suppress is denied.

## BACKGROUND

### I.    Factual Allegations

According to the Complaint and the Indictment, from in or about August 2020 until their arrests in October 2021, Mr. Ilori, who at that time was on pretrial release in another fraud and identity theft case in this district,[2] and Mr. Recamier were involved in a scheme to utilize stolen

---

[1] In support of his motion, Mr. Ilori filed a memorandum of law with several exhibits attached, (Def. Br. [ECF No. 26]), and the declaration of Adedayo Ilori (Ilori Decl. [ECF No. 27]). Mr. Recamier filed a letter seeking to join in Mr. Ilori's motion [ECF No. 28], but has not made any other filings in support of the motion. In opposition, the government filed a memorandum of law with several exhibits attached (Gov't Opp'n [ECF No. 33]).

[2] In March 2020, prior to the allegations at issue here, Mr. Ilori had been arrested and charged in the Southern District of New York with, *inter alia*, fraud, identity theft, and money laundering. *See United States v. Chancy*, No. 20-CR-378 (LJL) (S.D.N.Y.). That case was assigned to the Honorable Lewis J. Liman. After his arrest on those charges, Mr. Ilori was released on bail. Thereafter, on April 8, 2021, Mr. Ilori pleaded guilty to count one of the Indictment charging conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1349. At the change of plea hearing, Mr. Ilori's sentencing was scheduled for October 13, 2022. All of the conduct charged in this case was committed while Mr. Ilori was on supervised release and much of it after he had pleaded guilty and was awaiting

identities to, *inter alia*, fraudulently claim millions of dollars in Covid-19 relief loans through the federal Paycheck Protection Program (the "PPP") and the Economic Injury Disaster Loan ("EIDL") Program, programs administered by the United States Small Business Administration ("SBA").  (Indictment [ECF No. 6] ¶ 1; Complaint [ECF No. 1] ¶ 11).  During the course of this scheme, the Defendants made multiple loan applications and claimed the identities of multiple identity theft victims.  (Indictment ¶¶ 1, 4, 14; Complaint ¶ 11).  Many of these applications were submitted in the name of two particular victims (hereinafter referred to as "Identity Theft Victim-1" and "Identity Theft Victim-2").  (Complaint ¶¶ 11, 17(a)(iii), 18(a)(iii), 21(a)(ii), 22(a)(iii)). The representations on these applications were all false and the Defendants utilized the fraudulently obtained proceeds for their own benefit, including for cryptocurrency investments, securities, cash withdrawals, and personal expenses.  (Complaint ¶¶ 12, 24).

In addition to the Covid-19 relief loan fraud and identity theft scheme charged in the Indictment, the Defendants also engaged in other fraud and identity theft schemes.  Of significance to this motion, in or about September 2021, the Defendants leased a 2021 Mercedes Benz S580 sedan (the "Car"), using the stolen identity of Identity Theft Victim-2.  (Recamier Tr. 17:1–19:22; *see also* Gov't Opp'n Ex. A at 9, 22–24, 32, 44–45).

In connection with their investigation of the Defendants' COVID-relief-loan fraud, law enforcement obtained a warrant authorizing the location tracking of a cellular phone whose number the Defendants had provided on multiple fraudulent loan applications ("Phone-1"). (Complaint ¶¶ 27, 31).  During physical surveillance, law enforcement observed both Messrs. Ilori and Recamier in the same approximate location as Phone-1.  (Complaint ¶ 31).  Law enforcement also identified an IP address used to access an investment account that had received

---

sentencing in the *Chancy* case.  Mr. Ilori was detained for violations of the conditions of his release based on the charges in this indictment and the sentencing in the *Chancy* case was adjourned by Judge Liman to a later date.

proceeds from the fraud, which itself was connected to an apartment located in Long Island City, Queens (the "LIC Apartment"). (Complaint ¶ 29). Officers determined that the LIC Apartment was purportedly rented by a third identity theft victim ("Identity Theft Victim-3"), but that the application for the LIC Apartment listed Phone-1 as the contact information for the applicant. (Complaint ¶ 29). On October 7, 2021, law enforcement also observed Mr. Ilori entering the Car in the vicinity of the LIC Apartment and driving away. (Def. Br. Ex. B ("Investigation Mem.") at 1).

On October 7, 2021, Magistrate Judge Peggy Kuo, of the Eastern District of New York, signed a search warrant, authorizing law enforcement to search (a) the LIC Apartment and (b) Mr. Ilori's person and the "area within his immediate reach." (Def. Br. Ex. A ("Search Warrant")). That same day, law enforcement executed the search at the LIC Apartment and, upon finding Mr. Recamier inside, arrested him. (Complaint ¶ 33). Following his arrest, Mr. Recamier was advised of his *Miranda* rights, waived those rights, and engaged in an audio recorded interview with law enforcement. (*See* Gov't Opp'n Ex. B ("Recamier Tr."); Complaint ¶ 33). During this interview, Mr. Recamier told law enforcement that Mr. Ilori maintained the counterfeit ID cards and bank cards in the names of the identity theft victims and that, he believed, Mr. Ilori kept those counterfeit ID and bank cards in the Car. (Recamier Tr. 15:1– 16:17, 44:15–45:2). Upon questioning, Mr. Recamier also confirmed that the Defendants had leased the Car using the stolen identity of Identity Theft Victim-2 (Recamier Tr. 17:1–19:22; *see also* Gov't Opp'n Ex. A at 9, 22-24, 32, 44-45) and that the cell phones used by the Defendants during the course of the alleged scheme belonged to Mr. Ilori. (Recamier Tr. 48:8–19).

On October 8, 2021, law enforcement officers again observed Mr. Ilori approach and enter the Car. (Investigation Mem. at 1; Ilori Decl. ¶ 3). After Mr. Ilori entered the Car, Officers

approached him and executed the search warrant.  (Investigation Mem. at 1; Ilori Decl. ¶ 5).

Pursuant to the search warrant, Officers searched Mr. Ilori and recovered, among other things, a

key, bank cards in the name of Identity Theft Victim-1, and three cell phones.  (Investigation

Mem. at 2–3).  Officers also searched the Car's passenger compartment and recovered an

additional cell phone.  (Investigation Mem. at 3).  The officers then searched the Car's trunk

where they recovered an additional cell phone, ID cards in the name of identity theft victims,

including Identity Theft Victim-2, and bearing the photograph of Mr. Recamier, and bank cards

in the name of identity theft victims, including Identity Theft Victim-2.  (Investigation Mem. at

3–5).

## II.     Procedural History

Immediately following this search, Mr. Ilori was arrested based on probable cause to

believe he had violated the terms of his pretrial release in the case pending before Judge Liman.

(Investigation Mem. at 5).  That same day, Mr. Recamier was presented in magistrate court on a

criminal complaint and ordered detained.  [ECF Nos. 1–3].  On December 9, 2021, a grand jury

returned a six-count Indictment charging Messrs. Ilori and Recamier with (1) major fraud against

the United States, in violation of 18 U.S.C. § 1031 (Count One); (2) conspiracy to commit wire

and bank fraud, in violation of 18 U.S.C. § 1349 (Count Two); (3) wire fraud, in violation of 18

U.S.C. § 1343 (Count Three); (4) bank fraud, in violation of 18 U.S.C. § 1344 (Count Four); (5)

aggravated identity theft, in violation of 18 U.S.C. § 1028A (Count Five); and (6) conspiracy to

commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count Six).

## DISCUSSION

The Defendants seek to suppress the physical evidence recovered from Mr. Ilori's person

on the grounds that he does not recall possessing these items and from the trunk of the Car,

4

arguing that it was obtained in violation of the Fourth Amendment.[3]  In support of their argument that the search of the trunk of the Car violated the Fourth Amendment, they highlight that the Search Warrant authorized the officers only to search Mr. Ilori's person and "the area within his immediate reach."  (Def. Br. 3).  They contend that the items seized from Mr. Ilori's person and from the passenger compartment in the Car did not provide probable cause for the officers to search the trunk of the Car.  (Def. Br. 4–5).

## I.  The Defendant's Lack Standing To Challenge The Search Of The Car

As a preliminary matter, the Defendants lack standing to contest the search of the Car. Fourth Amendment rights are personal rights that may not be vicariously asserted.  *United States v. Haqq*, 278 F.3d 44, 47 (2d Cir. 2002) (quoting *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978)). A defendant's Fourth Amendment rights are violated "only when the challenged conduct invaded his legitimate expectation of privacy rather than that of a third party."  *United States v. Payner*, 447 U.S. 727, 731 (1980); *see also United States v. Santillan*, 902 F.3d 49, 62 (2d Cir. 2018) ("A defendant seeking suppression of evidence found without a search warrant must show that he had a reasonable expectation of privacy in the place or object searched." (citation and quotation marks omitted)).

The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure.  *Rakas*, 439 U.S. at 130, n.1; *see also United States v. Watson*, 404 F.3d 163, 166 (2d Cir. 2005) ("The defendant bears the burden of proving . . . that he had a legitimate expectation of privacy." (citation and quotation

---

[3] As an initial matter, to the extent the Defendants move to suppress the physical evidence found on Mr. Ilori's person, the motion is denied.  Mr. Ilori concedes that the officers had a search warrant to search his person (Ilori Decl. ¶ 6) and the Defendants do not challenge the validity of the search warrant.  (Def. Br. 4–5; *see also* Search Warrant).  Accordingly, the Defendants' motion to suppress the physical evidence seized from Mr. Ilori's person is denied.

marks omitted)).  This burden ordinarily is carried by the submission of sworn declarations.  *See*, *e.g.*, *United States v. White*, 2018 WL 4103490, at *8 (S.D.N.Y. 2018) ("That burden 'is met only by sworn evidence, in the form of an affidavit or testimony, from the defendant or someone with personal knowledge.'" (quoting *United States v. Montoya-Eschevarria*, 892 F. Supp. 104, 106 (S.D.N.Y. 1995))).

First, it is well settled that a defendant does not possess a reasonable expectation of privacy in a vehicle that he does not own.  *See*, *e.g.*, *United States v. Shuai Sun*, No. S4 18 CR 905-LTS, 2020 WL 529274, at *2 (S.D.N.Y. Feb. 3, 2020); *United States v. Bulluck*, No. 09 CR. 652 (PGG), 2010 WL 1948591, at *11 (S.D.N.Y. May 13, 2010) (non-owner passengers in a private automobile do not have reasonable expectation of privacy and thus could not contest a search of the glove compartment and the area beneath the seats).  In this case, the movant, Mr. Ilori explicitly disclaimed ownership of the Car.  (Ilori Decl. ¶¶ 3–4 ("As *this was not my vehicle*, I was not aware of all of the items in the vehicle.") (emphasis added)).  Mr. Recamier, who filed a mere four sentence letter seeking to join in Mr. Ilori's motion to suppress, did not file any declaration or other evidence in support of the motion and therefore has not met his burden of establishing ownership of the vehicle.  *See Watson*, 404 F.3d at 166 ("The defendant bears the burden of proving . . . that he had a legitimate expectation of privacy." (citation and quotation marks omitted)).  Moreover, the Car was leased in the name of Identity Theft Victim-2 (Recamier Tr. 17:1–19:22; *see also* Gov't Opp'n Ex. A at 9, 22–24, 32, 44–45), not in the name of either Defendant.

Second, the Defendants did not have a reasonable expectation of privacy in a car they obtained by means of identity theft.  Because the Defendants obtained the Car through fraud, they were in possession of it illegally and had no reasonable expectation of privacy in the Car.  It

is well settled that "a person present in a stolen automobile at the time of the search may [not] object to the lawfulness of the search of the automobile." *Byrd v. United States*, 138 S. Ct. 1518, 1529 (2018). The Court finds persuasive the Tenth Circuit's opinion in *United States v. Johnson*, 584 F.3d 995 (10th Cir. 2009). In that case, the Court affirmed the denial of a motion to suppress evidence found during the search of a storage unit that the defendant's girlfriend had rented under a stolen identity. *Id.* at 996–98. The Court in *Johnson* reasoned that the defendant did not have a reasonable expectation of privacy under those circumstances because the innocent third party has a right to access the property, meaning the defendant could not have exercised the right to exclude. *Id.* at 1003–04. Moreover, the court concluded that to decide the defendant had a reasonable expectation of privacy in a storage unit he used with the knowledge that it was fraudulently acquired would make the court "a party to th[e] fraud," which outcome it was unwilling to reach. *Id.* at 1004. Similar to the circumstances in *Johnson*, the Defendants here leased the Car using a stolen identity. (Recamier Tr. 17:1–19:22; *see also* Gov't Opp'n Ex. A at 9, 22–24, 32, 44–45). They therefore did not have a reasonable expectation of privacy in a car that they did not own and that was obtained by means of fraud.

Last, neither Defendant has standing to contest the search of the trunk of the Car because their possession and use of the vehicle without a valid license was unlawful. In *United States v. Lyle*, 919 F.3d 716 (2d Cir. 2019), the Second Circuit held that a driver of a rental car has no reasonable expectation of privacy in, and thus no standing to contest a search of, a car where he does not possess a valid license and is not an authorized driver under the rental agreement. *Id.* at 729. The Court reasoned that the defendant in *Lyle* did not have a reasonable expectation of privacy in the vehicle because, by virtue of him being unlicensed and in possession of a car without authorization, he "did not have *lawful* possession and control of the vehicle in the sense

that he unlawfully drove the vehicle onto the scene and could not lawfully drive it away." *Id.* at

729 (emphasis in original). The Court analogized a defendant's expectation of privacy in a car

the defendant unlawfully possesses and controls to that of a car thief, who would have no

reasonable expectation of privacy in the stolen car. *Id.* at 729; *see also Byrd*, 138 S. Ct. at 1529

("[A] person present in a stolen automobile at the time of the search may [not] object to the

lawfulness of the search of the automobile." (citation omitted)). The same reasoning applies to

Defendants who were operating without a license a vehicle leased under the name of an identity

fraud victim and which they therefore did not lawfully possess.

Here, the Defendants leased the Car through fraud, using the stolen identity of Identity

Theft Victim-2. (Recamier Tr. 17:1–19:22; *see also* Gov't Opp'n Ex. A at 9, 22–24, 32, 44–45).

At the time of the search, Mr. Ilori's driver's license was suspended (Gov't Opp'n Ex. C) and Mr.

Recamier's driver's license was expired (Gov't Opp'n Ex. D). Moreover, when Law

enforcement approached Mr. Ilori in the driver's seat of the car, he was preparing to operate a

vehicle he had no right to drive. (Investigation Mem. at 1). Indeed, law enforcement had earlier

observed Mr. Ilori illegally operating the Car the day before the arrest. (Investigation Mem. at

1).

Under the circumstances of this case, the Defendants had no reasonable expectation of

privacy in, and thus no standing to contest a search of, the trunk of a Car that they possessed

unlawfully and were not licensed to operate. Accordingly, neither Defendant has standing to

contest the search of the Car and the Motion to Suppress is denied.

## II.   The Search And Seizure Of Items From The Trunk Of
The Car Was Permissible Under The Automobile Exception

Even if the Defendants had standing to contest the search of the Car, the record clearly

establishes that the search and seizure of items from the trunk of the Car was permissible under

the automobile exception.  The Fourth Amendment of the Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ."  U.S. Const. amend. IV.  "Warrantless searches are *per se* unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions."  *United States v. Babilonia*, 854 F.3d 163, 178 (2d Cir. 2017) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).  One such exception, as relevant here, is the automobile exception.

As Defendant Ilori concedes (*see* Def. Br. 4), the automobile exception to the warrant requirement permits law enforcement to conduct a warrantless search of a readily mobile vehicle where there is probable cause to believe that the vehicle contains contraband.  *United States v. Jones*, 893 F.3d 66, 70 (2d Cir. 2018).  Probable cause exists when "the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a [person] of reasonable caution in the belief that evidence of a crime will be found in the place to be searched."  *Id.* at 71 (citation omitted).  "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."  *United States v. Ross*, 456 U.S. 798, 825 (1982); *see also Arizona v. Gant*, 556 U.S. 332, 347 (2009) ("If there is probable cause to believe a vehicle contains evidence of criminal activity, [the automobile exception] authorizes a search of any area of the vehicle in which the evidence might be found" (internal citation omitted)).

Here, the law enforcement officers conducting the search of the trunk of the Car had more than probable cause to believe it would contain contraband and evidence of criminal

conduct.  At the time of the search, law enforcement had identified a Covid-19 relief loan fraud and identity theft scheme involving the possession and use of multiple fraudulent drivers' licenses and bank cards.  (Indictment ¶¶ 1, 4, 14; Complaint ¶¶ 11, 17, 18, 21, 22).  Law enforcement had also connected both Defendants to that scheme.  (Complaint ¶¶ 27, 29, 31; Investigation Mem. at 1).  Significantly, after law enforcement obtained the search warrant, but before law enforcement stopped Mr. Ilori and searched the Car, law enforcement arrested Mr. Recamier, who confessed that he and Mr. Ilori were involved in the fraud scheme and told the officers that Mr. Ilori stored the fake identification and bank cards in the Car.  (Recamier Tr. 15:1–16:17, 39:4–16, 44:15–45:2).  When law enforcement stopped Mr. Ilori to execute the Search Warrant, he was about to drive the unlawfully obtained Car and they found in his possession bank cards in the name of Identity Theft Victim-1 and three cellular phones. (Investigation Mem. at 2–3).  Under the totality of the circumstances, the officers searching the Car had more than probable cause to believe the trunk would contain contraband and evidence of criminal conduct.  *See United States v. Johnson*, 659 F. App'x 674, 679 (2d Cir. 2016) (probable cause existed to search a defendant's car based on statements made by the defendant's co-conspirator and observations made by law enforcement); *see also United States v. Kone*, 19-CR-808 (VEC), 2022 WL 1498955, at *2–5 (S.D.N.Y. May 11, 2022) (probable cause existed to search a defendant's apartment, in part, based on statements from an alleged co-conspirator).

     In his motion to suppress, Mr. Ilori's sole argument is that there was no probable cause to search the trunk of the Car because none of the items recovered from Mr. Ilori's person nor any of the items recovered from the Car's passenger compartment gave rise to probable cause to believe that the vehicle contained contraband.  (Def. Br. 4).  Even accepting the premise of this argument, Mr. Ilori ignores facts and circumstances surrounding the stop itself, including, most

significantly, the statement of Mr. Recamier, his co-conspirator, that Mr. Ilori stored the fake

identification and bank cards — tools of the trade in fraud and identity theft — in the Car.

(Recamier Tr. 15:1–16:17, 39:4–16, 44:15–45:2).

Under the totality of the circumstances, the officers had ample probable cause to believe

that the Car contained contraband and evidence of criminal conduct.  Accordingly, the search and

seizure of items from the trunk of the Car was permissible under the automobile exception.[4]

### III.    Defendants' Request For a Hearing Is Denied

Mr. Ilori contends that, at the time he was searched, he did not have on his person some

of the items the officers inventoried as seized from the search of his person.  (*See* Investigation

Mem. at 1–2).  Specifically, Mr. Ilori states in his declaration that he does not recognize the bank

cards in the name of Identity Theft Victim-1 and that he does not believe he had three cell phones

on his person.  (Ilori Decl. ¶ 8).  As an initial matter, to the extent the Defendants move to

suppress the physical evidence found on Mr. Ilori's person, the motion is denied.  Mr. Ilori

concedes that the officers had a search warrant to search his person (Ilori Decl. ¶ 6) and the

Defendants do not challenge the validity of the search warrant.  (Def. Br. 4–5; *see also* Search

Warrant).

By his motion, Mr. Ilori requests an evidentiary hearing to determine whether law

enforcement recovered certain evidence from his person at the time of the search.  (Ilori Decl. ¶

11).  The Defendant's request for an evidentiary hearing is denied.  The Court is "not required as

---

[4] The Defendants do not contest the search of the passenger compartment of the Car, (*see* Def. Br. 4–5), nor could they.  First, the search of the passenger compartment of the Car was within the immediate reach of Mr. Ilori and therefore *was* authorized by the search warrant.  (*See* Search Warrant).  Second, as discussed above, the Defendants lack standing to contest the search of the passenger compartment of the Car.  And third, for the same reason that law enforcement had probable cause to search the trunk of the Car, they also had probable cause to search the passenger compartment of the Car.  As Defendant Ilori concedes (*see* Def. Br. 4), "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."  *Ross*, 456 U.S. at 825.

a matter of law to hold an evidentiary hearing" if "an affidavit of someone with personal knowledge of the underlying facts" does not "state sufficient facts which, if proven, would have required the granting of the relief requested." *United States v. Viscioso*, 711 F. Supp. 740, 745 (S.D.N.Y. 1989) (citations omitted); *see also United States v. Filippi*, No. 12 Cr. 604 (RA), 2013 WL 208919, at *9 (S.D.N.Y. Jan. 16, 2013) ("An evidentiary hearing on a motion to suppress ordinarily is required only if 'the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question.'" (quoting *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992)).

To the extent the request for an evidentiary hearing relates to Defendant's challenge to the search of the trunk, as a preliminary matter, he does not have standing to move to suppress items found in the Car, including in its trunk. *See* Part I *supra*. Mr. Ilori's representations as to what he had in his possession at the time he was searched do not alter this conclusion. Moreover, even had the officers not found any items on Mr. Ilori's person at the time they stopped him, there were still more than enough facts known by officers at the time of the search to give law enforcement probable cause to search the trunk of the Car. *See* Part II *supra*. To the extent that Mr. Ilori challenges the search of his person, which was authorized by the search warrant, the items recovered from that search would have no bearing on whether the search *itself* was unconstitutional. Accordingly, even if the Court accepted Mr. Ilori's representation that he did not have on his person bank cards in the name of Identity Theft Victim-1 and three cell phones at the time of the search (*see* Ilori Decl. ¶ 8), the motion to suppress is without merit.

Because there are no material factual issues in dispute, Mr. Ilori's request for an evidentiary hearing is denied.

## CONCLUSION

For the reasons stated above, Defendant Recamier's motion [ECF No. 28] to join the motion to suppress is GRANTED.  The Defendants' motion [ECF No. 25] to suppress physical evidence recovered from Mr. Ilori's person and the trunk of the Car and request for an evidentiary hearing is DENIED.

The Clerk of Court respectfully is requested to close docket entries 25 and 28.


**SO ORDERED.**

**Date:  June 10, 2022**
**        New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**